UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIANA ARNOLD, | CASE NO. 1:11CV898 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | Magistrate Judge George J. Limbert |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **REPORT & RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Diana Arnold ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court affirm the Commissioner's decision and dismiss Plaintiff's complaint in its entirety with prejudice:

**I.  PROCEDURAL AND FACTUAL HISTORY**

On May 30, 2008, Plaintiff filed applications for DIB and SSI, alleging disability beginning March 18, 2008 due to osteoarthritis, carpal tunnel syndrome, and neck, shoulder, elbow and hand problems. ECF Dkt. #11 at 165-170, 189.[1] The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 133-139. Plaintiff filed a request for an administrative hearing and on June 28, 2010, an ALJ conducted the hearing. *Id.* at 107, 157. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 107.

On August 27, 2010, the ALJ issued a decision denying benefits. ECF Dkt. #11 at 57-63. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id.* at 48-52. On May 6, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On November 15, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #13. On February

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

6, 2012, Defendant filed a brief on the merits. ECF Dkt. #16.

## II.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

Plaintiff's medical records show that in April 2007, she presented to her medical provider for refills of her blood pressure medication and complained of right shoulder pain that had been persistent since a work-related injury in 2001. ECF Dkt. #11 at 285. She indicated that she sometimes experienced sharp radiating pain and she had a history of arthritis for more than two years. *Id*. Medical records showed that as of July 2007, Plaintiff presented for a routine follow-up and was feeling well, with no complaints or concerns. *Id*. at 289. She reported exercising regularly and had lost three pounds. *Id*. Plaintiff reported in October 2007 that her arthritis was progressively worsening as Tylenol and Aleve were not helping as much and her knees were bothering her the most. *Id*. at 292. Physical examination revealed no edema, and crepitus in the right knee on passive movement, but full range of motion. *Id*. at 293. Plaintiff was advised to continue using Tylenol, exercising and losing weight. *Id*. At her January 2008 appointment, Plaintiff presented with no specific complaints. *Id*. at 294.

At her March 2008 appointment, Plaintiff reported that she had been laid off from her employment. ECF Dkt. #11 at 296. She indicated she was feeling well overall and physical examination of her extremities revealed no edema or clubbing. *Id.*

In June 2008, Plaintiff presented for an urgent visit complaining of low back, shoulder, knee and hip pain, as well as elbow and thumb pain. ECF Dkt. #11 at 298. She indicated that it began five years ago and was getting worse. *Id.* The doctor noted tender points in virtually all soft tissue areas and diagnosed diffuse musculoskeletal pain syndrome. *Id.* at 299. The doctor wished to rule out rheumatoid arthritis and indicated that if that test were negative, Plaintiff most likely had osteoarthritis or fibromyalgia. *Id*. Plaintiff thereafter requested that her records be sent to the Bureau of Disability. *Id*. At the end of June 2008, Plaintiff presented for follow-up and indicated that her chronic intermittent joint pain was "somewhat better." *Id*. at 300. Diagnoses included joint pain/back pain osteoarthritis, probably musculoskeletal. *Id*.

At her September 2008 follow-up appointment, Plaintiff informed the doctor that she had stopped working in March 2008 due to her low back pain. ECF Dkt. #11 at 302.

-2-

On August 15, 2008, Dr. Paras, an agency examining internist, issued a report indicating that he had examined Plaintiff on August 5, 2008. ECF Dkt. #11 at 258. He reviewed Plaintiff's self-report of medical history, which indicated that Plaintiff was diagnosed and treated in 2000 for right shoulder and upper back muscle strain through the Bureau of Worker's Compensation. *Id.* He further noted that Plaintiff worker's compensation claim was settled in 2003 and she received pain medication and physical therapy. *Id.* He reported that she complained of intermittent right shoulder and upper back pain, precipitated by using her right upper extremity, as well as low back pain, and hip, knee and left elbow pain. *Id.* Dr. Paras' physical examination showed a moderately obese female with no assistive device, with a somewhat stiff neck, no motor or sensory deficit, no muscle atrophy, no evidence of joint heat or swelling, no crepitus in the knees, and normal posture. *Id.* at 259. Dr. Paras ordered x-rays of Plaintiff's lumbar spine and right knee, which showed mild levoscoliosis of the lumbar spine and unremarkable right knee findings. *Id.*

Dr. Paras' impressions included history of chronic right shoulder and upper back pain, history of chronic low back pain with mild levoscoliosis, history of hypertension adequately controlled, and obesity. ECF Dkt. #11 at 259. He concluded that:

> this claimants[sic] ability to perform work related physical activities are limited by the pain in the multiple joints in the body. The manual muscle testing and the range of motion examination revealed painful right shoulder joint on limited ROM of right shoulder; painful left elbow on full ROM of left elbow; painful low back on limited ROM of dorsolumbar spine and hips; painful right knee on limited ROM of right knee and painful hand and finger joints on hand dynamometries.

*Id.* at 259-260. Dr. Paras noted that the muscle testing he conducted was not reliable. *Id.* at 263.

On September 8, 2008, Dr. Klyop, a state agency physician, reviewed Plaintiff's file and found that despite Plaintiff's chronic back pain, right shoulder pain, knee pain and obesity, she could perform light work with limitations of never climbing ladders, ropes or scaffolds, and only occasional overhead reaching and only frequent bilateral handling. ECF Dkt. #11 at 272-273. He concluded that Plaintiff was only partially credible because the medical evidence did not support her allegations that she could not perform all daily living activities that she used to perform. *Id.* at 275. As support, he cited the unremarkable x-rays, lack of edema in the joints, and the fact that she walked without an assistive device. *Id.* He attributed no weight to the opinions of Dr. Paras because

-3-

Dr. Paras provided only general statements. *Id*. at 276.

In October 2008, Plaintiff presented to the emergency room complaining of upper and lower back pain after stating that she was in a motor vehicle accident the previous Saturday. ECF Dkt. #11 at 320. Plaintiff's pain was noted as mild, and the physical examination showed no acute distress, no evidence of head trauma, and a non-tender neck with painless range of motion. *Id.* at 322. She was diagnosed with lumbar and thoracic sprain and discharged in stable condition. *Id*. at 323.

In December 2008, Plaintiff presented to her doctor for a three-month follow-up and complained of daily heartburn. ECF Dkt. #11 at 328. She denied any muscle aches. *Id.* On March 16, 2009, Plaintiff presented for her follow-up and complained of knee and lower back pain. *Id*. at 329. In April of 2009, Plaintiff presented to the emergency room complaining of neck pain, bilateral shoulder pain and upper back pain. *Id.* at 349. She was diagnosed with cervical disc disease and advised to follow up for further diagnostic testing. *Id*. at 358. She presented to the emergency room again in May of 2009 complaining of back pain and was diagnosed with exacerbation of back pain and given Toradol. *Id.* at 366.

On May 14, 2009, Plaintiff was referred to the orthopedic department of MetroHealth System by her primary care physician for cervical spondylosis. ECF Dkt. #11 at 399. She reported that she had neck pain for years, but had new onset of neck pain over the last month, with radiation into her shoulders. *Id.* She also complained of low back pain. *Id.* Plaintiff had a normal gait and could heel/toe/tandem walk without difficulty. *Id*. A cervical spine MRI showed multilevel degenerative disc disease with end-plate spurring without significant canal or foraminal narrowing. *Id.* at 400. The doctor found no need for surgical intervention, referred Plaintiff for physical therapy, and prescribed NSAIDS as needed for the pain. *Id.* at 401. Bilateral knee x-rays showed minimal pancompartmental osteophyte formation suggesting the possibility of an underlying chondromalacia patellae. *Id.*

Plaintiff complained of back pain again in June 2009 and it was noted that she was diagnosed with osteoarthritis, and prescribed Naprosyn and Flexeril, although she did not fill those prescriptions due to cost. ECF Dkt. #11 at 330. She denied having headaches. *Id*. She had full passive range of motion in all extremities, but not in her neck due to complaints of pain. *Id*. at 378.

No warmth or erythema was found in her joints and no palpable crepitus found in her knees. *Id*. Plaintiff participated in physical therapy, but it was ineffective and she was discharged with a home exercise program. *Id.* at 423.

On August 31, 2009, Plaintiff presented for follow-up and reported "feeling well, no new complaint." ECF Dkt. #11 at 331. She reported receiving treatment for osteoarthritis in her neck, back and knees, and she indicated that she was on "pain pills, which are effective." *Id*. Plaintiff denied muscle aches and had no edema or swelling. *Id*.

A physical examination in February 2010 showed decreased range of motion in the neck and back due to pain, but full range of motion in the knees but positive clicking palpated in the knees bilaterally. ECF Dkt. #11 at 381.

On May 17, 2010, Plaintiff presented for follow-up indicating that she felt well, although she continued to have symptoms in her neck and upper back. ECF Dkt. #11 at 383. She had attended six sessions of physical therapy and was currently using a treadmill five days a week for thirty minutes, but was limited by her knee pain. *Id*.

**III**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In her decision, the ALJ determined that Plaintiff suffered from obesity, hypertension, cervical spondylosis without myelopathy and scoliosis, which qualified as severe impairments under 20 C.F.R. §404.1521 *et seq*. and 20 C.F.R. § 416.921 *et seq*. ECF Dkt. #11 at 59. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. She discounted Plaintiff's allegations of pain and limitations and concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with restrictions from overhead reaching with the right and left upper extremities, no climbing of ladders, ropes and scaffolds, only occasional climbing of ramps and stairs, no more than frequent stooping, kneeling, crouching and crawling, and no more than frequent handling and fingering with the right extremity, but not continuously. *Id*. at 60. Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could return to performing her past relevant work as an assembler. *Id*. at 62.

**IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**V.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

-6-

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## VI. ANALYSIS

### A. CREDIBILITY

Plaintiff first asserts that the ALJ erred in assessing her credibility. ECF Dkt. #13 at 465-469. She questions some of the ALJ's findings and points to her "persistent efforts" to obtain pain relief as evidence of her credibility. *Id*. at 468. She notes that she was prescribed Vicodin and Flexeril, she attended "back school," and she participated in physical therapy. *Id*. She also noted that she used a TENS unit on a weekly basis. *Id.* For the following reasons, the undersigned recommends that the Court find that the ALJ followed the correct legal standards in assessing Plaintiff's credibility and substantial evidence supports the ALJ's credibility determination.

An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). The court cannot substitute its own credibility determination for that of the ALJ. *Kuhn v. Comm'r,* 124 Fed. App'x 943, 945 (6th Cir. 2005). Claimants who challenge the ALJ's credibility determination "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir.2005). The court must give the ALJ's credibility determinations great weight because "the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "Since the ALJ has the opportunity to observe the demeanor of the

witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir.2007).

Pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). When disabling pain is alleged, the social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. §§ 404.1529, 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* The ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and

-8-

statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. While she must consider the factors in Social Security Ruling 96-7p, an ALJ need not analyze all of the factors in her decision. *See Boutros v. Astrue*, No. 1:09CV2574, 2010 WL 3420296, at *4 (Aug. 9, 2010). She must, however, show that she considered the relevant evidence and she must provide clear reasons for her credibility findings. *Id.,* citing SSR 96-7p, Purpose section and citing and quoting *Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

The undersigned recommends that the Court find that the ALJ applied the proper legal standards and provided clear reasons for her credibility determination and substantial evidence supports that determination. In evaluating Plaintiff's credibility, the ALJ did consider the factors of SSR 96-7p and the relevant regulations. ECF Dkt. #11 at 60-61. She cited to the relevant Rulings and regulations in her decision and discounted Plaintiff's credibility based upon a lack of support by the objective medical evidence, Plaintiff's work history, and Plaintiff's inconsistent statements as to why she stopped working, her symptoms, the side effects from her medications and her daily living activities. *Id*.

The undersigned agrees with Plaintiff that some of the statements and facts that the ALJ relied upon in discounting her credibility are questionable. For example, Plaintiff questions the ALJ's determination that her reporting of the frequency of her headaches was inconsistent. ECF Dkt. #13 at 466. The ALJ had found that Plaintiff's testimony that she had daily headaches was inconsistent with reports to medical providers. ECF Dkt. #11 at 62. The record shows that Plaintiff reported to doctors in April of 2007, March 2008, and in February 2009 that she had only occasional headaches, while she reported in May of 2009 that she experienced headaches on a daily basis. *See* ECF Dkt. #11 at 196, 285, 345, 412. Plaintiff also testified at the hearing that she had headaches often, "[s]omtimes every day." *Id.* at 116. The undersigned agrees with Plaintiff that headache frequency can fluctuate over a three-year period. Moreover, none of the reports in the evidence of record defined "occasional" or elaborated on whether the headaches occurred multiple times per week, per month or per day.

Plaintiff also questions the ALJ's finding that the reporting of her daily living activities was inconsistent with her testimony and therefore supported discounting her credibility. ECF Dkt. #13 at 466-467. The ALJ had found that while the claimant testified that she has difficulty doing household chores and washes dishes ten minutes at a time, she reported in August 2008 that she was able to do light household chores such as vacuuming and cooking. ECF Dkt. #11 at 62. Plaintiff contends that the August 2008 report that the ALJ referred to was prepared by the agency examining physician who took her statements and summarized them in his own words. *Id*. at 467. Plaintiff points out that the report fails to discuss how long it took her to vacuum or cook or how many breaks she needed to complete these activities. *Id*.

Again, the undersigned finds that reliance upon this alleged inconsistency, if taken alone, or even coupled with the headache finding, would not constitute adequate support for the ALJ's decision to discount Plaintiff's credibility. Dr. Paras, the agency examining physician, saw Plaintiff on August 5, 2008 and he reported that Plaintiff was "[c]apable of self care and doing light household chores, like wash dishes, make bed, vacuum the floor and cook." ECF Dkt. #11 at 259. Plaintiff testified at the hearing that she could dust one appliance and then would have to stop and rest and continue the rest of the dusting either later that day or another day. *Id*. at 120. She also testified that she could wash dishes for ten minutes until her back would start to hurt and she would have to sit down and finish the dishes later. *Id*. at 121.

Had the ALJ's credibility analysis relied solely upon these findings, the undersigned would hesitate to recommend that the Court affirm the ALJ's credibility determination. However, the ALJ relied upon much more than these two statements in discounting Plaintiff's credibility and substantial evidence supports the ALJ's credibility determination.

The ALJ conducted a thorough review of the medical evidence. Even Plaintiff concedes that "[t]he ALJ undertook a lengthy analysis of the evidence and its relation" to her testimony. ECF Dkt. #13 at 465. The ALJ cited to Plaintiff's complaints of pain, but noted that the objective medical evidence did not support the intensity, persistence and limitations that Plaintiff contended. ECF Dkt. #11 at 61. In support, the ALJ cited to a medical examination showing that Plaintiff had a normal gait and normal tandem and heel/toe walking in order to find that Plaintiff's allegations of very

-10-

restricted walking, sitting and standing limitations were not entirely credible. ECF Dkt. #11 at 61, citing ECF Dkt. #11 at 400.  The ALJ also cited to a lumbar spine x-ray that showed mild levoscoliosis, but no compressive deformity or significant spurring or disc space narrowing. ECF Dkt. #11 at 61, citing ECF Dkt. #11 at 268.  As for limitations due to knee pain, the ALJ acknowledged Plaintiff's complaints of knee pain but determined that no limitations were necessary since x-rays showed conflicting results, one showing no abnormalities and the other showing mild osteophyte formation which "may suggest" chondromalacia patellae. ECF Dkt. #11 at 62, citing ECF Dkt. #11 at 268, 456.  She also noted a physical examination showing full range of knee motion, the fact that Plaintiff had not sought treatment for knee pain for twelve continuous months, and the evidence that Plaintiff had a normal gait and walked without the use of an assistive device. ECF Dkt. #11 at 62, citing ECF Dkt. #11 at 381.  The ALJ further cited to Dr. Paras' examination revealing no motor or sensory deficits and no joint heat or swelling as support for a finding that Plaintiff's shoulder pain was not as limiting as she alleged.  *Id*. The ALJ further noted that while a MRI showed degenerative disc disease with end plate spurring in the cervical spine, no significant canal or foraminal narrowing was found, no surgical intervention was recommended, and Plaintiff was referred to physical therapy.  *Id*., citing ECF Dkt. #11 at 400. The ALJ also noted that a June 2009 examination showed that Plaintiff had full passive range of motion in all extremities, except for complaints of neck pain.  *Id*.

The ALJ also reviewed Plaintiff's testimony regarding the activities that aggravate her pain and symptoms, like movement, and Plaintiff's attempt at physical therapy, which was unsuccessful. ECF Dkt. #11 at 61-62. The ALJ also noted Plaintiff's testimony that she experienced drowsiness from taking her medications even though Plaintiff did not report side effects to her doctors.  *Id.* at 61.  Plaintiff asserts that the ALJ erroneously found that her testimony regarding side effects from medications was inconsistent with her reports to medical providers.  However, the ALJ correctly noted that Plaintiff testified that her medications caused side effects, but had reported to medical providers that she experienced no side effects. ECF Dkt. #11 at 62, citing ECF Dkt. #11 at 300. The evidence in the record supports the ALJ's finding.  *Id*.  This was a valid factor for the ALJ to consider.

Further, the ALJ found that it appeared that Plaintiff had stopped working because she was laid off and not because of her intensity, persistence and limiting effects of her impairments, since the medical evidence showed that Plaintiff had reported back and shoulder problems even while she was working, yet she continued to work and did not stop until she was laid off from her last employment. *Id.* at 62, citing ECF Dkt. #11 at 285, 289, 298.  The evidence of record provides a reasonable basis for such a finding that it was not until after she was laid off that Plaintiff reported increased back and shoulder pain. *Id.* at 298.

Plaintiff points to additional record evidence showing that she was diagnosed with "diffuse musculoskeletal pain syndrome" on June 10, 2008 and had neck spasms with radiating pain as per an emergency room report in April 2009. ECF Dkt. #13 at 467, citing ECF Dkt. #11 at 299, 352. The emergency room report from April 2009 also recommends that Plaintiff follow-up for additional medical testing due to "extensive degenerative disc disease" in her cervical spine.  ECF Dkt. #11 at 358.  She also cites to her attendance at back school and use of a TENS unit that the ALJ failed to mention.  ECF Dkt. #13 at 468.  Plaintiff contends that these records show that her pain and abilities were as severe and limiting as she testified.  *Id.* at 467-468.  The ALJ did note findings from a medical source that Plaintiff had a number of tender points. ECF Dkt. #11 at 61, citing ECF Dkt. #11 at 299.  However, the records cited by Plaintiff provide no discussion, description or interpretation as to the pain levels experienced by Plaintiff or any resulting limitations in her work-related abilities.

Since the ALJ applied the proper legal standards in determining Plaintiff's credibility, and provided clear reasons supported by substantial evidence for discounting Plaintiff's credibility, the undersigned recommends that the Court affirm the ALJ's credibility determination.

### B.     **RFC**

Plaintiff also asserts that the ALJ erred in determining her RFC for limited light work because the RFC was based upon an incomplete credibility analysis and the ALJ erroneously attributed only little weight to the findings of Dr. Paras, the agency examining physician. ECF Dkt. #13 at 465, 467, 469. She further contends that the ALJ erred by failing to include in her RFC that she had difficulty staying on task and would be absent from work due to her symptoms. *Id.* at 470.

To the extent that Plaintiff relies upon an alleged flaw in the ALJ's credibility analysis, the undersigned recommends that the Court find no merit to that assertion based upon the undersigned's above credibility analysis and recommendation.

As to the weight attributed to the findings of Dr. Paras, the undersigned also recommends that the Court find that substantial evidence supports the ALJ's decision to give "less weight" to his opinion. As outlined above, Dr. Paras examined Plaintiff on August 5, 2008. ECF Dkt. #11 at 258. His physical examination of Plaintiff showed a moderately obese female with no assistive device, with a somewhat stiff neck, no motor or sensory deficit, no muscle atrophy, no evidence of joint heat or swelling, no crepitus in the knees, and normal posture. *Id*. at 259. Dr. Paras ordered x-rays of Plaintiff's lumbar spine and right knee and upon review of the x-rays and his examination of Plaintiff, he diagnosed Plaintiff with a history of chronic right shoulder and upper back pain, history of chronic low back pain with mild levoscoliosis, history of hypertension adequately controlled, and obesity. *Id*. Dr. Paras concluded that "this claimants[sic] ability to perform work related physical activities are limited by the pain in the multiple joints in the body." *Id*.

The ALJ reviewed Dr. Paras' findings, and stated that "[t]he opinion of the consultative examiner at Exhibit 2F that the claimant's work related activities are 'limited by pain' with no further explanation is given less weight because it is vague and does not provide a function-by-function assessment of capacity." ECF Dkt. #11 at 62.

It is true that opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D.Ohio Aug.5, 2009). This

occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

In this case, the ALJ did provide reasons for attributing "less weight" to Dr. Paras' opinion and the Court should find that substantial evidence supports her decision to do so. The ALJ is correct that Dr. Paras' opinion is vague in that he concludes that Plaintiff is "limited by pain" and cites to her pain and limited ranges of motion, but fails to indicate whether she could perform any work-related activities at all and the extent to which, if any, she could perform such activities. ECF Dkt. #11 at 258-260. Dr. Paras does not even identify, much less assess, any of the work-related functions. Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to attribute "less weight" to Dr. Paras' findings and conclusions.

**C.** **VE**

The Court should also reject Plaintiff's assertion that the ALJ erred by not including limitations in her RFC that she would be off task and absent from work due to her symptoms. First, the undersigned notes that Plaintiff fails to cite to any record medical evidence in her brief that supports such limitations and the record does not support such limitations. *See Leffel v. Comm'r of Soc. Sec.*, 30 Fed. App'x 459, 461 (6th Cir. 2002), unpublished ("The problem with Leffel's argument, however, is the fact that the record below contains no medical evidence describing such limitation."). Second, while Plaintiff correctly indicates that the ALJ included such limitations in three of the five hypothetical questions that she presented to the VE, the ALJ was not bound to accept all of the limitations that she presented in those hypotheticals. The ALJ's hypothetical person "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 548 (6th Cir. 2002). The medical evidence did not support these limitations and, as explained above, substantial evidence supported the ALJ's credibility determination. Accordingly, the undersigned recommends

that the Court find no merit to Plaintiff's assertion.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety with prejudice.

DATE: August 28, 2012                  /s/*George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).