UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DIANA ARNOLD,** ) | CASE NO. 1:11CV898 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| **MICHAEL J. ASTRUE,** ) | |
| **Comm'r of Social Security,** ) | |
| ) | |
| Defendant. ) | |

Having exhausted her administrative remedies, Plaintiff Diana Arnold now seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits and Supplemental Security Income. The case was referred to Magistrate George J. Limbert for preparation of a Report and Recommendation ("R&R"). See 28 U.S.C. §636 and Local Rule 72.2(b). The R&R (Doc. # 17) recommends affirming the Commissioner's decision and dismissing Plaintiff's complaint.

Plaintiff filed objections to the R&R (Doc #: 18), and the Commissioner filed a response thereto (Doc. # 20). Because the Commissioner applied the correct legal standards and reached a decision that was supported by substantial evidence, the Court will overrule Plaintiff's objections, adopt the R&R, affirm the Commissioner's decision, and dismiss the case.

**I.**

Plaintiff, who weighs over 200 pounds and stands 5'4" tall, has been receiving off-and-on medical care since 2007 to address, among other maladies, hypertension, scoliosis, degenerative

disc disease, arthritis, and injuries from a 2001 work-related accident. She complains of headaches, general malaise, and pain in her knees, back, shoulder, hip, elbow, and thumb. She has not been working since early 2008.

On May 30, 2008, shortly after stopping work, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income. After her applications were denied, she requested a hearing before an Administrate Law Judge ("ALJ"). The hearing took place on June 28, 2010, and featured testimony from Plaintiff, who was represented by counsel, her medical records, including the medical opinions of two consulting physicians, and testimony from an impartial vocational expert. On August 27, 2010, the ALJ issued a decision, which became the Commissioner's final decision when the Appeals Council declined review.

The ALJ found that Plaintiff suffered from obesity, hypertension, cervical spondylosis without myelopathy, and scoliosis. In spite of these ailments, the ALJ concluded, Plaintiff was not disabled because she had the "residual functional capacity" to perform light work, albeit with a number of limitations, and could return to her past work as an assembler. The ALJ reached these conclusions after conducting a thorough review of the medical record and comparing Plaintiff's subjective complaints about the severity of her pain with the objective medical evidence. The ALJ found that, although the "medically determinable impairments could reasonably be expected to cause the alleged symptoms," they were not consistent with Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms." (Doc. # 11 at 18).

Plaintiff, in her written objections, takes issue with the ALJ's credibility assessment and with the ALJ's residual functional capacity analysis. As to the credibility assessment, Plaintiff

-2-

argues that some of the "alleged inconsistencies identified by the ALJ were not, in fact, inconsistencies at all." (Doc. # 18 at 1). Moreover, although she acknowledges she gave her doctors conflicting reasons for why she stopped working—in March 2008 she said she had been laid off, whereas in September 2008 she said she quit because of low-back pain—Plaintiff avers "the reason she left employment is not relevant to the question of the extent to which her impairments caused disabling pain." (Id. at 1–2).

Plaintiff also argues that the ALJ's residual functional capacity analysis was flawed because it relied primarily on a medical opinion rendered almost two years before. According to Plaintiff, the ALJ had a duty "to either recontact [the physician] for a revised opinion, request an additional consultative examination, or request the services of a medical expert at the hearing in order to provide an accurate determination of Plaintiff's residual functional capacity." (Id. at 4).

II.

Judicial review of the Commissioner's decision is limited to determining whether he employed the proper legal standards and whether there is substantial evidence in the record to support his factual findings. See 42 U.S.C. §§ 405(g), 1363(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971). Plaintiff does not contend the ALJ employed the wrong legal standards. Instead, she argues the ALJ's findings are not supported by substantial evidence.

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, even if that evidence could support a decision the other way. Casey v. Secretary of Health and Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993) (internal citations omitted). It is more than a scintilla, but less than a preponderance, of evidence. See Cutlip v. Secretary of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.1994) (per curiam).

A.

Plaintiff's first objection is that the ALJ improperly assessed her credibility. She maintains that if her "allegations of disabling pain and its incapacitating effects...are fully credited, there is no doubt [she] is disabled." (Doc. # 18 at 4).

It is perfectly acceptable for an ALJ to consider the credibility of a claimant and even to discount the claimant's credibility where there are contradictions among the medical reports and claimant's testimony. <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. Mich. 1997). An ALJ's credibility assessment must be accorded great weight and deference, since the ALJ, unlike the reviewing court, has the opportunity to observe the witnesses' demeanor while testifying. <u>See</u> <u>Id.</u> Moreover, despite Plaintiff's suggestion to the contrary, allegations of pain are not sufficient in themselves to establish a disability: "statements about your pain or other symptoms *will not alone* establish that you are disabled." 20 C.F.R. 404.1529(a) (emphasis added).

The Sixth Circuit has created a two-pronged test to evaluate a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Walters</u>, 127 F.3d at 531. The ALJ applied this test to conclude that, although there was objective medical evidence of an underlying condition, the condition was not so severe that she did not have the residual functional capacity to perform past work as an assembler.

The ALJ noted numerous inconsistencies between the medical evidence and Plaintiff's testimony. Plaintiff's testimony that she has difficulty walking, sitting, and standing, was

contradicted by the medical record, which revealed a normal gait and tandem, heel-to-toe walking. Plaintiff told the ALJ she has pain in her lower back and down both legs, but an August 2008 exam revealed only intermittent pain. In addition, an x-ray showed no compressive deformity or significant spurring or disc-space narrowing. While Plaintiff said she cannot raise her arms above her head, the medical exam showed otherwise: no motor or sensory deficits, no joint heat or swelling, and, as of June 2009, full passive range of motion in all extremities. Likewise, despite her claim that she had difficulty using her knees, she had not sought treatment for knee pain for 12 continuous months, and a medical exam revealed a full range of motion in the knees and a normal gait without the use of a walking aide. The ALJ also noted that, despite her complaint that her medications make her drowsy, Plaintiff never report this side effect to her doctors.

It is true, as Plaintiff notes, that some of the alleged inconsistencies identified by the ALJ were not actually inconsistencies. But those flaws in the ALJ's analysis do not somehow rectify the multiple actual inconsistencies. Indeed, those actual inconsistencies are quite significant, and the ALJ was justified in using them to discount Plaintiff's complaints of pain.

Still, Plaintiff criticizes the ALJ's reliance on the conflicting accounts she provided to her doctors about why she stopped working. Although Plaintiff is correct that the inconsistency is not relevant to the question of the severity of her pain, it is certainly relevant to the question of credibility, which Plaintiff herself acknowledges was "of paramount importance." (Doc. # 18 at 4). The Court concludes that the ALJ's credibility determination regarding the severity of Plaintiff's pain was reasonable and clearly supported by substantial evidence.

B.

Plaintiff next objects to the ALJ's use of the medical opinions. The ALJ gave greater weight to the opinion of Dr. Klyop, a State agency medical consultant, than to the opinion of Dr. Cantor, another medical consultant. Dr. Klyop opined that "Plaintiff can perform light work with frequent stooping, kneeling, crouching, and crawling; occasional reaching overhead with the right upper extremity; and frequent handling bilaterally." (Doc. # 11 at 19). Dr. Cantor, by contrast, opined that Plaintiff's work-related activities are limited by pain. The ALJ discounted Dr. Cantor's opinion because it was vague and unexplained.

Plaintiff argues that Dr. Klyops' opinion, rendered on September 8, 2008, was outdated, since by the time ALJ issued her decision on August 27, 2010, nearly two years had passed. According to Plaintiff,

> Significant additional evidence was developed during that two-year period, including reports of emergency room visits due to severe pain, failed attempts at physical therapy, additional medications and other treatment modalities such as use of a TENS unit, and additional documentation of severe back and neck problems....Had the entire record, as it existed at the time of the hearing in 2010, been considered by the non-examining physician, it is quite possible that a different finding would have been reached, especially since this case was entirely about the amount of pain experienced by Ms. Arnold and its effect on her ability to perform the functions of substantial gainful activity.

(Doc. # 18 at 3).

The Court agrees with the Commissioner that Plaintiff waived this argument by raising it for the first time in her objections to the R&R. Swain v. Comm'r of Soc. Sec., 379 Fed. Appx. 512, 517-518 (6th Cir. 2010) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived."). In any event, the arguments fail on the merits.

To support her position that the consulting physician on whose opinion the ALJ primarily relies must have a complete medical snapshot when reviewing a claimant's file, Plaintiff cites Rogers v. Comm'r, 486 F.3d 234, 245 (6th Cir. 2007). But Rogers does not support her position.

First, the issue in that case was whether the ALJ was correct in giving greater weight to a non-treating physician than to a treating physician. Here, by contrast, both of the competing medical opinions were from non-treating physicians, and their opinions were rendered within one month of each other. Second, in that case, more than six years had passed between the consulting physician's review of the claimant's medical history and the ALJ's decision. Id. Here, less than two years had elapsed. Third, the gap between the date of the consultant's opinion and the date of the ALJ's ruling was not *per se* the problem; rather, the Sixth Circuit found the ALJ's decision faulty because it "failed to provide sufficient justification for the weight given to the opinions of Rogers' treating physicians." Id. at 246.

Despite Plaintiff's concern that the medical opinion on which the ALJ relied was not current, the ALJ did in fact have—and review—all of the relevant, up-to-date medical records, including Plaintiff's medical records from early 2009 up through the middle of 2010. Thus, when the ALJ rendered her decision, she had a complete medical snapshot. The Court finds Plaintiff's argument to the contrary unavailing.

### III.

For the foregoing reasons, the Court concludes that the ALJ's decision regarding the credibility assessment of Plaintiff and the residual functional capacity analysis were supported by substantial evidence. Accordingly, the Court overrules Plaintiff's objections, adopts the R&R, affirms the ALJ, and dismisses the case.

**IT IS SO ORDERED.**

                                       */s/Dan Aaron Polster   10/12/12*
                                       **Dan Aaron Polster**
                                       **United States District Judge**